PUERTO RICO LABOR RELATIONS BOARD, Petitioner, *v.* ORANGE CRUSH OF PUERTO RICO, INC., Respondent.

No. 55. Submitted April 15, 1958.—Decided April 25, 1958.

*J. B. Fernández Badillo, Attorney General (José Trías Monge, Ex-Attorney General, and Edgar S. Belaval, Assistant Attorney General, on the brief) and Ramón Acevedo Oliveras, César J. Dones Magaz and Agustín Mangual Hernández for petitioner. E. Rodríguez Colón for respondent.*

MR. JUSTICE BELAVAL delivered the opinion of the Court.

In a collective bargaining agreement between Orange Crush of Puerto Rico, Inc. and Unidad General de Trabajadores de Puerto Rico (U.G.T.), it was provided with respect to vacation the following:

"(1) Vacation shall not be cumulative.

"(2) The Company shall grant to its regular employees 96 hours of vacation for every year of work on the basis of the regular work hour.

"(3) Whenever a workman is unable to find someone to substitute for him, the Company may pay him for the 96 hours of vacation and continue him in his employment.

"(4) The Company shall set up the vacation plan.

"(5) Employees who in the course of the year worked not less than 2,000 hours shall be entitled to vacation; however, the days or weeks in which the employee is not permitted to work for reasons of economy or defective machinery, or some other eventuality for which the employee is not responsible, shall be counted as hours worked by the employee solely for vacation purposes.

"(6) Workmen who have been absent from work for more than 10 days during the previous year, without any justified cause, shall not be entitled to vacation.

"(7) If a workman who has acquired the right to vacation shall cease in his work, he shall be entitled to the proportional part which may correspond to him."

Ángel Luis Santos worked for Orange Crush of Puerto Rico, Inc. from April 4, 1955, to January 17, 1956, a total of 1,992 hours. When he claimed his vacation the employer alleged that since he had not worked the 2,000 hours required by subdivision 5, clause IX of the collective bargaining agreement above copied, he was not entitled to vacation. The employee alleged, on the contrary, that since he had ceased

in his work before completing 2,000 hours, he was entitled to the proportional part representing the difference between the 2,000 hours required by the agreement and the 1,992 hours worked by him, pursuant to subdivision 7 of clause IX. According to the procedure contained in the same collective bargaining agreement, the case was submitted to arbitration, acting as fifth member Rafael A. Berríos López of the Labor Arbitration Division of the Labor Department.

The question submitted to the arbitrator was the following: "Whether or not the employee Ángel Luis Santos is entitled to receive the proportional part which allegedly corresponds to him under the collective bargaining agreement in force, specifically, clause IX bearing on vacation." The arbitrator was of the opinion that the case was "typically one of interpretation of the terms of the collective bargaining agreement," and accordingly made his award to the effect that the employee Ángel Luis Santos was entitled to receive the proportional part of the vacation which corresponded to him up to the date of his resignation.

Without much elaboration, the arbitrator's reasoning may be presented thus: Subdivision 5 of clause IX contemplates the *enjoyment of vacation* as such, while subdivision 7 of the same clause contemplates *compensation for vacation* which is not enjoyed. In the former case, *the right to enjoyment* arises after the employee has worked 2,000 hours, while in the latter case the *right to compensation* arises as soon as the employee becomes permanent. The purpose of the 2,000-hour limit is to discourage absences without just cause, but it does not contemplate the forfeiture of the proportional part to which the employee would be entitled when he ceases in his work. The reasoning is in agreement with our ruling, as a question of law, in construing clauses similar to the one under consideration, in cases involving different mandatory decrees. *Rivera* v. *District Court*, 72 P.R.R. 691, 694 (Negrón Fernández) (1951) ; *Fernando Sierra Berdecía* v. *Antonio Santos*, per curiam decision of November 18, 1957.

In its answer before us, the respondent alleges that: (1) the "arbitrator committed a gross error of law in making his award, thereby giving rise to misconduct"; (2) the "arbitrator committed errors of law in attempting to make his award in accordance with the law"; and (3) the "award is void as being contrary to public policy."

The respondent alleges, briefly, that "if laborer Ángel Luis Santos would have worked any number" (of hours) "in excess of 2,000 hours, he would have been given in that case the proportional part of the vacation to which he was entitled upon ceasing in his work." It is clear that either of the two hypotheses may be the object of elaborate argument. But our authority at this time to set aside an arbitration award made by virtue of a covenant under a collective bargaining agreement is strictly limited. In the absence of fraud, misconduct, lack of due process in the conduct of the hearing, violation of public policy, lack of jurisdiction, and want of entirety—*Labor Relations Board v. N. Y. & P. R. S. S. Co.*, 69 P.R.R. 730, 746 (Snyder) (1949)—we lack authority to set aside an arbitration award "for mere errors of judgment either as to the law or as to the facts." The purpose of statutes of this nature is precisely to place labor-management disputes outside the juridical subtlety and within the sound judgment of the arbitrator.

We do not believe that in this case the arbitrator committed a gross error of law, as alleged by the respondent. As a matter of fact, the question submitted to him was the mere interpretation of a clause of the collective bargaining agreement. The fact that he contrasted certain clauses of the collective bargaining agreement with others, or certain subdivisions of a clause with others, does not amount to transforming a question of fact into a question of law. The fact that the analysis be similar to that followed by the experts of the law, constitutes no misconduct on his part

since that method is universal and valid and may be used indistinctly either in a judicial award or in an arbitration award. For the reasons stated, we believe that the award is not contrary to public policy.

The award in question should be enforced.

Mr. Justice Serrano Geyls did not participate herein.